UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GORDON FLOWERS, MADELINE BROWN, AMINAT FAKUNLE, YVETTE PEREZ, DULCEMARIA RIVERA, PRINCE THOMAS, JESSIE TORRENCE, and ROCHELLE TORRENCE on Behalf of Themselves and Others Similarly Situated,<br><br>Plaintiffs,<br><br>-against-<br><br>UNITED PARCEL SERVICE, INC.,<br><br>Defendant. | No. 24-cv-07086<br><br>**AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

Gordon Flowers, Madeline Brown, Aminat Fakunle, Yvette Perez, Dulcemaria Rivera, Prince Thomas, Jessie Torrence, and Rochelle Torrence ("Individual Plaintiffs") on behalf of themselves and others similarly situated (collectively, the "Class" or "Class Plaintiffs"), by and through their attorneys, Emery Celli Brinckerhoff Abady Ward & Maazel LLP and Vladeck Raskin & Clark P.C., for their Amended Complaint allege as follows:

### PRELIMINARY STATEMENT

1. United Parcel Service, Inc. ("UPS") delivers packages to clients throughout Staten Island but does not provide the same service to two apartment complexes in the northeast: Fox Hill Apartments and Park Hill Apartments. Throughout the borough, UPS delivers packages to individual apartment buildings, taking them inside each building. It does so for buildings of similar size and with a similar number of units as Park Hill and Fox Hill. And it does so for buildings that are part of larger complexes, too.

2.      Unlike elsewhere on Staten Island, UPS does not deliver into the Park Hill and Fox Hill buildings, and it has not done so for the past thirty years. The residents of the more than 1,400 units in these eleven buildings must convene at one location outside 240 Park Hill Avenue to wait for the UPS truck to arrive and pick up their packages from the truck. This pick-up location is up to a third of a mile away from the residents' homes—prohibitively far for some elderly residents and those with disabilities. Residents must accommodate UPS's schedule and be available to pick up their packages between 11:00 a.m. and 12:00 p.m. on delivery days. Residents must wait for the truck—outdoors, in an unprotected area, in rain, snow, heat, and cold—or miss their deliveries. This Non-Delivery Policy for Park Hill and Fox Hill is unique to UPS: FedEx, DHL, and Amazon all deliver to the apartment buildings.

3.      Gordon Flowers is one of the residents who lives in the Fox Hill complex. After an injury left him with limited mobility, Mr. Flowers began to order many necessities online for delivery to his home. However, because of the apartment complex he lives in, Mr. Flowers does not benefit from the same delivery services that residents of nearby buildings do.

4.      Madeline Brown, Aminat Fakunle, Yvette Perez, Dulcemaria Rivera, Prince Thomas, Jessie Torrence, and Rochelle Torrence—like Mr. Flowers—all live in the same neighborhood and all are subject to the same UPS policy of non-delivery.

5.      What makes Park Hill and Fox Hill different? Many similar apartment buildings on Staten Island—where UPS offers its standard service—are majority White. But at the two apartment complexes where UPS does not deliver to the residents, Fox Hill and Park Hill, only 1% of the residents are White. The vast majority of the Park Hill and Fox Hill residents are Hispanic and/or Black.

2

6.      UPS's Non-Delivery Policy discriminates against and adversely impacts the residents of Park Hill and Fox Hill, the vast majority of whom are non-White, by refusing to provide these residents the basic services that the residents of other similarly situated apartment buildings enjoy—services for which these residents have paid. This racial discrimination is directly prohibited by the New York State Civil Rights Law ("NYCRL") and the New York City Human Rights Law ("NYCHRL").

7.      This civil rights class action seeks compensation for Class members for the discrimination they have experienced, and declaratory and injunctive relief to compel UPS to provide the same service to Park Hill and Fox Hill that it provides to everyone else on Staten Island.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class (for example, all of the Individual Plaintiffs) is a citizen of a State different from the Defendant. The number of members of the proposed Class exceeds 100. 28 U.S.C. § 1332(d)(5)(B).

9.      This Court has personal jurisdiction over the Defendant because Defendant's acts and omissions committed in or aimed at this District gave rise to the claims alleged in this Complaint. Moreover, Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District and in the State of New York.

10.    The acts complained of occurred in the Eastern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims occurred in this District.

**PARTIES**

11.    Plaintiff Gordon Flowers currently resides in the Fox Hill Apartments on Staten Island, New York. Mr. Flowers is physically disabled and has mobility impairments. As a result of an injury sustained in 2015, Mr. Flowers uses a walker or a rollator (similar to a walker, with four wheels rather than two) to assist him as he walks.

12.    Plaintiff Madeline Brown currently resides in the Fox Hill Apartments on Staten Island, New York.

13.    Plaintiff Aminat Fakunle currently resides in the Fox Hill Apartments on Staten Island, New York.

14.    Plaintiff Yvette Perez currently resides in the Park Hill Apartments on Staten Island, New York.

15.    Plaintiff Dulcemaria Rivera currently resides in the Park Hill Apartments on Staten Island, New York.

16.    Plaintiff Prince Thomas currently resides in the Park Hill Apartments on Staten Island, New York.

17.    Plaintiff Jessie Torrence currently resides in the Park Hill Apartments on Staten Island, New York.

18.    Plaintiff Rochelle Torrence currently resides in the Park Hill Apartments on Staten Island, New York.

4

19.    Defendant United Parcel Service, Inc. ("UPS") is a Delaware corporation with its principal place of business at 55 Glenlake Parkway N.E., Atlanta, Georgia 30328.

## JURY DEMAND

20.    Plaintiffs demand a trial by jury in this action.

## FACTUAL ALLEGATIONS

21.    This case arises from UPS's discriminatory Non-Delivery Policy for two apartment complexes on the northern edge of Staten Island: Fox Hill Apartments and Park Hill Apartments.

22.    Fox Hill is an apartment complex comprised of three buildings owned by the Fox Hill Housing Development Fund Company, Inc., a domestic not-for-profit corporation. These buildings are located at 350 Vanderbilt Avenue, 320 Vanderbilt Avenue, and 141 Park Hill Avenue (collectively "Fox Hill"). Fox Hill is privately owned, subsidized housing for low-income renters.[1]

23.    Across its three buildings, Fox Hill has 362 units. Each building is six stories.

24.    The Park Hill Apartments ("Park Hill") are adjacent to Fox Hill. Park Hill consists of eight apartment buildings that span the length of Park Hill Avenue—about a half a mile. These are located at Numbers 140, 160, 180, 185, 225, 240, 260, and 280 Park Hill Avenue (collectively "Park Hill"). The buildings are all six stories. Most of the buildings are on the east side of Park Hill Avenue; two are on the west side.

---

[1] Governor Cuomo Announces Completion of $92.7 Million Modernization and Upgrade Project at Fox Hill Development (Jun. 5, 2018), https://hcr.ny.gov/governor-cuomo-announces-completion-927-million-modernization-and-upgrade-project-fox-hill (last accessed Aug. 20, 2024).

25.    Park Hill is owned by Delshah Capital, and is privately owned, subsidized housing for low-income renters.[2]

26.    Across its eight buildings, Park Hill has more than 1,100 units. Each building contains roughly 138 units. Each building is six stories.

27.    According to census data from 2020, the overwhelming majority of Park Hill and Fox Hill apartments are people of color—only 1% of residents are White Non-Hispanic. Of the other 99% of residents, 23.7% are Hispanic, 71.5% are Black Non-Hispanic, 0.5% are Asian Non-Hispanic, 2.6% are two or more races, and 0.8% fall into the category of "other" races. In other words, 99% of Park Hill and Fox Hill residents are non-White, and are predominantly Black and Hispanic.

28.    Fox Hill's three buildings are clustered in a wedge-shaped area of land between Vanderbilt Avenue to the northwest, Osgood Avenue to the northeast, and Park Hill Avenue to the southeast. Park Hill's eight buildings line either side of Park Hill Avenue, a street that runs nearly half a mile roughly north to south, terminating in Palma Drive to the south and Osgood Avenue to the north. *See* Figure A.

***UPS's Non-Delivery Policy***

29.    UPS maintains a policy whereby it does not deliver packages to the individual apartment buildings at the Park Hill and Fox Hill apartments (the "Non-Delivery Policy"). In this way, UPS does not provide comparable service to Park Hill and Fox Hill residents as it does to other customers.

---

[2] *See* Giavanni Alves, *Park Hill Apartments tenants protest poor living conditions: "We have had enough,"* SIlive.com (Nov. 17, 2022), https://www.silive.com/news/2022/11/park-hill-apartments-tenants-protest-poor-living-conditions-we-have-had-enough.html.

30.    The mechanics of the Non-Delivery Policy are as follows. Instead of delivering packages to the apartment buildings, UPS requires residents of all units in all Park Hill and Fox Hill buildings, more than 1,400 units in total, to come to one location at a predetermined time (currently 11:00 a.m.), to wait for the UPS truck to arrive and then pick up their packages from the truck.

31.    Currently, the UPS truck parks in front of 240 Park Hill Avenue. Upon arrival, the UPS delivery workers will wait for a period of time, during which residents of the surrounding Park Hill and Fox Hill buildings must come to the truck's location to pick up their packages.

32.    Residents of Park Hill and Fox Hill must come to the truck; the truck does not come to them and drop off packages in their buildings.

33.    Park Hill and Fox Hill apartment buildings are spread out over a significant area. Residents may have to walk up to a third of a mile to reach the UPS pick-up location from his or her apartment. This is particularly onerous for residents with disabilities and the elderly, but the walk is burdensome for anyone, especially if they are picking up a heavy or bulky delivery.[3] The pre-set pickup time of 11:00 a.m., in the middle of the workday, is also burdensome for residents who work during the day.

34.    Although the UPS truck theoretically arrives at a pre-set time, it does not always do so in practice. Accordingly, residents hoping to pick up their packages may be left to wait outside for the truck to arrive, sometimes for hours. While waiting for a delayed delivery may be a minor inconvenience for someone receiving delivery service directly to their home—and waiting in the comfort of their own residence, it is highly burdensome for residents of Park Hill

---

[3] Erik Bascome, 'Go down to meet the truck': UPS delivery a grueling hassle for these NYC residents, SIlive.com (Aug. 8, 2023) https://www.silive.com/news/2023/08/go-down-to-meet-the-truck-ups-delivery-a-grueling-hassle-for-these-nyc-residents.html.

and Fox Hill. Residents end up waiting outside, in all types of weather, without shield from rain, snow, or heat, for their packages—or else risk missing their delivery.

35.    Sometimes, the UPS truck comes early, and residents may miss the delivery window altogether.

36.    If residents do miss their pickup window or are otherwise unable to pick up their UPS packages, after two attempts, UPS will send their packages to its facility in Travis, on the western edge of Staten Island. The facility is six miles away from Park Hill and Fox Hill, twenty-five minutes by car and an hour and ten minutes by bus.

37.    Class members are often unable to make alternate arrangements to have packages shipped by another carrier. When ordering a product online, for example, customers are often not free to choose which carrier they would like to deliver the product. Rather, a particular retailer will contract with one or more carriers for shipping services, and the customer will be forced to accept the carrier the retailer has chosen.

38.    Customers will have often directly paid for this shipping service. Even if a customer does not pay an additional shipping fee, the cost of shipping is factored into a product's purchase price. And yet, customers at Park Hill and Fox Hill do not get the full benefit of this service for which they have paid.

39.    UPS has confirmed its policy not to deliver to Park Hill or Fox Hill. *See above* n. 3.

40.    UPS has maintained this policy of non-delivery for the past thirty years.

41.    And UPS's policy is an outlier. Every other carrier delivers directly to the individual apartment buildings at Park Hill and Fox Hill. FedEx, DHL, Amazon delivery services, and other delivery services all deliver to each individual building.

8

42.     Following an injury to his leg, as he began to order online more than he had before, Gordon Flowers learned of UPS's policy of non-delivery, and that he would have to walk a third of a mile to 240 Park Hill Avenue to meet the truck and pick up his packages. He has been harmed by UPS's policy of non-delivery.

43.     Madeline Brown has been harmed by UPS's policy of non-delivery. She has been forced to mail any UPS packages to her sister's house because UPS does not deliver packages into her building.

44.     Aminat Fakunle has been harmed by UPS's policy of non-delivery. She frequently waits at the UPS pick-up point for packages—in all weather—because UPS does not deliver packages into her building.

45.     Yvette Perez has been harmed by UPS's policy of non-delivery. She has been forced to rely on other people to pick up her packages because UPS does not deliver packages into her building.

46.     Dulcemaria Rivera has been harmed by UPS's policy of non-delivery. She frequently waits at the UPS pick-up point for packages—in all weather—because UPS does not deliver packages into her building.

47.      Prince Thomas has been harmed by UPS's policy of non-delivery. Mr. Thomas is in his 70s. He frequently waits at the UPS pick-up point for packages—in all weather—because UPS does not deliver packages into his building.

48.     Jessie Torrence has been harmed by UPS's policy of non-delivery. He frequently waits at the UPS pick-up point for packages—in all weather—because UPS does not deliver packages into his building.

9

49.    Rochelle Torrence has been harmed by UPS's policy of non-delivery. She frequently waits at the UPS pick-up point for packages—in all weather—because UPS does not deliver packages into her building.

***UPS's Policy Discriminates against non-White Residents of Staten Island***

50.    While UPS does not deliver to Park Hill and Fox Hill apartment buildings, it *does* deliver directly to apartment buildings with higher proportions of White residents in the same area: northeastern Staten Island.

51.    The following buildings are buildings in Staten Island similarly situated to Park Hill and Fox Hill: each building is a multi-family building, each complex contains at least 100 units, each individual building is six or more stories, each building is an elevator building, and each is in northeastern Staten Island.[4]

52.    For example, in northeastern Staten Island, UPS delivers to 655 Tysens Lane. This is a six-story apartment building with 385 units. It is part of a complex that includes 245 Mill Road (six stories and 380 units), 26 Ebbits Street (six stories and 254 units), and at least five other apartment buildings. These buildings are 51% White. UPS delivers to each individual building in the complex.

53.    In northeastern Staten Island, UPS delivers to 90 Bay Street Landing, a ten-story building with 100 units, that is 69% White. UPS delivers inside the building.

54.    In northeastern Staten Island, UPS delivers to 18-20 Father Capodanno Boulevard (Seaside Gardens), a seven-story apartment complex with 269 units across two buildings, that is 51.7% White. UPS delivers into the buildings in this complex, leaving packages in a central location and in certain circumstances bringing them to individual apartment doors.

---

[4] All buildings are east of the north-south artery running from the Bayonne Bridge down Route 440, Willowbrook Park and the College of Staten Island, the Greenbelt Nature Center, and the Willowbrook Parkway.

55.    In northeastern Staten Island, about a mile and a half away from Park Hill and Fox Hill, UPS delivers to 961 and 937 Victory Boulevard (the Silver Lake Apartments), seven-story buildings with 222 units across two buildings, that are 65.7% White. UPS delivers inside these buildings.

56.    In northeastern Staten Island, less than a mile away from Park Hill and Fox Hill, UPS delivers to 1950 Clove Road (Elbee Gardens), a seven-story building with 178 units, that is 34.9% White. UPS delivers to the mailroom inside this building.

57.    In northeastern Staten Island, just over one mile away from Park Hill and Fox Hill, UPS delivers to 850 and 830 Howard Avenue (Highview Condo I and Highview Condo II), six-story buildings with 66 and 67 units, respectively, that are 70.8% White. UPS delivers packages inside the lobby of the building.

58.    In northeastern Staten Island, one mile away from Park Hill and Fox Hill, UPS delivers to 755 Narrows Road North, a twelve-story building with nearly 100 units, that is 64.3% White. UPS delivers packages to the lobby of the building.

59.    In northeastern Staten Island, less than two miles away from Park Hill and Fox Hill, UPS delivers to 800 Victory Boulevard, a seven-story building with 150 units, that is 38.5% White. UPS delivers packages inside this building.

60.    In northeastern Staten Island, about a mile away from Park Hill and Fox Hill, UPS delivers to 600 Hylan Boulevard, a seven-story building with approximately 136 units, that is 46.6% White. UPS delivers packages to the mailroom inside this building.

61.    In northeastern Staten Island, less than two miles away from Park Hill and Fox Hill, UPS delivers to 700 Victory Boulevard (Parkview Apartments), a seventeen-story building with 228 units, that is 30.9% White. UPS delivers packages inside this building.

11

62.    Each of these apartment buildings is similarly situated to Park Hill and Fox Hill in all material respects: they are similar in size, with similar numbers of stories and similar numbers of units per building, and they are in a similar area of Staten Island. *See* Figure B.

***UPS's Policy Adversely Impacts Park Hill and Fox Hill Residents Who are Predominantly Non-White***

63.    The Class has been and continues to be adversely impacted by UPS's policy of non-delivery. Relative to residents of other buildings where UPS delivers to the building, including those identified above, Class members are denied the full benefit of UPS's shipping services. Class members suffer the adverse impacts of this policy in several ways.

64.    First, the overwhelmingly non-White residents of Park Hill and Fox Hill suffer the indignity of being denied basic services that their neighbors in other buildings with more White residents receive. In buildings only a mile or two away—with far more White residents—residents receive UPS packages delivered into their buildings as a matter of course. Yet it is the almost exclusively non-White residents of Park Hill and Fox Hill who are denied this basic service, and instead must line up outside and wait for the UPS truck. They must take time out of their day to be at the pick-up spot according to UPS's schedule, and walk up to a third of a mile, to receive their deliveries. The dignitary harm of UPS's policy is substantial.

65.    Second, the policy deprives Class members of their time. Rather than pick up their packages from their building's lobby or office at their convenience, residents must carve out time between the hours of 11:00 a.m. and 12:00 p.m. on weekdays to meet the truck outside of 240 Park Hill Avenue. This pickup window has no flexibility. Especially for those who work regular daytime hours, this arrangement is onerous. And if residents miss this window, they must devote additional time to picking up packages at the UPS facility in Travis—over two hours if using public transportation, and again, only available during business hours.

66.     Third, the Class bears the cost of making alternate arrangements. In circumstances where UPS's Non-Delivery Policy is unworkable for Class members and they are unable to meet the truck—because of work commitments, physical impairments, weather, etc.—Class members must bear the burden of coming up with workarounds. For example, some Class members have packages sent to a commercial business, delivered to friends, or decide to travel to the UPS facility in Travis to pick up their packages at a different time. Such workarounds have their own costs associated with them: time spent traveling, sometimes on public transportation, to other locations or compensation to those holding their packages for them. But in all instances, even if Class members have come up with workarounds, UPS's Non-Delivery Policy deprives Class members of the value of the delivery for which they have paid: the convenience of door-to-door delivery service.

67.     Finally, the Class has a greater risk of missing deliveries under this policy than if they received deliveries directly to their building. And the cost imposed on residents if they miss their opportunity to pick up their packages is even more significant, given the distance of the UPS facility in Travis from Park Hill and Fox Hill.

68.     Class members suffer the dignitary harm of being forced to wait outside for deliveries, the harm of being denied the basic service UPS provides to other neighboring buildings, including some within a mile of the UPS outdoor drop-off location, and they must bear costs associated with accommodating UPS's policy, including its rigid pickup schedule, time spent waiting for the truck, and making alternate arrangements if they are unable to pick up their deliveries according to UPS's schedule.

69.     It is the overwhelming Black and Hispanic residents of Fox Hill and Park Hill who bear the impact of UPS's policy.

70.     The overwhelmingly Black and Hispanic residents of Fox Hill and Park Hill are denied the benefit of the public accommodation provided by UPS.

71.     UPS's Non-Delivery Policy has been ongoing for *thirty years*. Class members have been harmed by this policy for years, and the Class continues to experience these harms to this day. And over the past few years, as many Americans have increasingly relied on delivery and online ordering, the impact of this policy has been particularly burdensome.

72.     For years, residents of Park Hill and Fox Hill, including Mr. Flowers, have advocated for UPS to change its policy. UPS has refused. UPS has attempted to justify its policy with references to incidents from thirty years ago and other unexplained safety concerns.[5] Yet UPS points to no evidence that these concerns are meaningful today, nor does UPS account for the fact that other carriers see fit to deliver to the Park Hill and Fox Hill buildings.

***Notice to New York Attorney General***

73.     Plaintiff Flowers served notice of this action on the Attorney General.

74.     At or before commencement of this action, Plaintiff Flowers sent a letter to the New York Attorney General's office notifying the office that he will be commencing an action that pursues, *inter alia*, a claim under the NYCRL § 40-c.

## CLASS ACTION ALLEGATIONS

75.     The Individual Plaintiffs bring this suit as a class action under Federal Rule of Civil Procedure 23(b)(1)(A), (b)(2), and (b)(3), on behalf of himself and other individuals similarly situated who have lived in the Park Hill or Fox Hill apartments in the past three years and have been adversely impacted by the UPS policy of Non-Delivery.

76.     All of the members of the Class were injured as a result of Defendant's conduct.

---

[5] *See above* n.3.

77.     The members of the Class are so numerous that joinder of all Class members is impracticable. On information and belief, the number of households in the Park Hill and Fox Hill apartments total over 1,400. On information and belief, a majority of these households have had one or more packages shipped to them through UPS in the past three years.

78.     The questions of law and fact presented by the Individual Plaintiffs are common to other members of the Class. Among others, the questions of law and fact common to the Class are:

    a.  Whether UPS's policy of Non-Delivery to the Fox Hill and Park Hill apartment buildings whose residents are predominantly non-White has an unjustified disparate impact based on race and/or national origin in violation of the NYCHRL;

    b.  Whether UPS's policy of Non-Delivery to apartment buildings in Fox Hill and Park Hill discriminates against Class members on the basis of race and/or national origin within the meaning of the NYCRL;

    c.  Whether Class members are entitled to relief and, if so, the nature and extent of that relief, including without limitation the amount of monetary and statutory damages.

79.     Common issues of law and fact, including without limitation those set forth above, predominate over any individual issues.

80.     UPS's claims and practices are common to all members of the Class.

81.     The violations suffered by the Individual Plaintiffs are typical of those suffered by the Class, as all members of the class were subject to UPS's Non-Delivery Policy to Park Hill and Fox Hill. The entire Class will benefit from the monetary and injunctive relief sought.

82. The Individual Plaintiffs have no conflict of interest with any Class members, are committed to the vigorous prosecution of all claims on behalf of the Class, and will fairly and adequately protect the interests of the Class.

83. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant.

84. Counsel competent and experienced in federal class actions and federal civil rights litigation has been retained to represent the class. Emery Celli Brinckerhoff Abady Ward & Maazel LLP is a law firm with offices in New York City with extensive experience in complex civil rights litigation and class action lawsuits. Vladeck Raskin & Clark P.C. is a law firm with offices in New York City with extensive experience in complex civil rights litigation and class action lawsuits.

85. This class action is superior to any other method for the fair and efficient adjudication of this legal dispute, as joinder of all Class members is impracticable. The damages suffered by members of the Class, although significant, are small in relation to the extraordinary expense and burden of individual litigation; therefore, it is highly impractical for such Class members to seek individual redress for damages.

86. There will be no extraordinary difficulty in the management of this Class Action.

16

**FIRST CAUSE OF ACTION**
**New York City Human Rights Law**
**(N.Y.C. Admin. Code § 8-107)**

87.    Plaintiffs repeat and reallege the above paragraphs as if the same were fully set forth at length herein.

88.    The New York City Human Rights Law ("NYCHRL") provides, in relevant part, that "[i]t shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation[,] [b]ecause of any person's actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation, uniformed service, height, weight, or immigration or citizenship status, directly or indirectly[,] [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation." N.Y.C. Admin. Code § 8-107(4).

89.    Under the NYCHRL, a plaintiff may establish an unlawful discriminatory practice by showing that a covered entity's policy or policies have an unjustified disparate impact on a protected group. N.Y.C. Admin. Code § 8-107(17).

90.    At all relevant times, Class Plaintiffs were "persons" as defined under the NYCHRL. *See* N.Y.C. Admin. Code § 8-102.

91.    At all relevant times, Defendant UPS met the definition of the term "place or provider of public accommodation." N.Y.C. Admin. Code § 8-102.

92.    Defendant has a policy of refusing to deliver to individual apartment buildings in Park Hill and Fox Hill, Staten Island.

17

93.     Defendant's Non-Delivery Policy has an unjustified disparate impact based on race and national origin.

94.     Defendant's policy of non-delivery to Park Hill and Fox Hill treats the majority non-White residents of Park Hill and Fox Hill differently and less favorably than similarly situated multi-family residential buildings with more White residents in northeast Staten Island.

95.     Defendant's Non-Delivery Policy does not bear a significant relationship to a significant business objective.

96.     As a direct and proximate result of Defendant's wrongful acts and omissions, Class Plaintiffs have sustained damages, and have suffered and continue to suffer dignitary harm.

### SECOND CAUSE OF ACTION
### New York Civil Rights Law
### (N.Y. Civ. Rights L. § 40-c)

97.     Plaintiffs repeat and reallege the above paragraphs as if the same were fully set forth at length herein.

98.     The New York Civil Rights Law ("NYCRL") provides, in relevant part, the following: "No person shall, because of race, creed, color, national origin, sex, marital status, sexual orientation, gender identity or expression, or disability . . . be subjected to any discrimination in his or her civil rights . . . by any other person or by any firm, corporation, or institution." NYCRL § 40-c.

99.     The NYCRL provides for a statutory penalty of between one hundred and five hundred dollars per violation of § 40-c. NYCRL § 40-d.

100.    At all relevant times, Class Plaintiffs were "persons" within the meaning of the statute.

18

101. At all relevant times, Defendant was a "firm, corporation, or institution" within the meaning of the statute.

102. By refusing to deliver to the apartment buildings in Park Hill and Fox Hill, Defendant discriminated against Class Plaintiffs on account of their race.

103. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Class Plaintiffs have sustained damages and suffered and continue to suffer dignitary harm.

104. Class Plaintiffs are entitled to statutory damages between $100 and $500 per instance of UPS failing to deliver a shipment to a Class member's building, instead requiring the Class member to wait to meet the UPS truck, make alternate arrangements, or miss out on their delivery.

WHEREFORE, the Individual Plaintiffs, on behalf of the Class, respectfully request an order certifying this suit as a class action pursuant to Federal Rule of Civil Procedure 23, and request judgment against Defendant as follows:

a) Declaring that Defendant's discriminatory practices violate the NYCHRL, N.Y.C. Admin. Code § 8-107, and the NYCRL, N.Y. Civ. R. L. § 40-c;

b) Enjoining Defendant, Defendant's agents, employees, and successors, and all other persons in active concert or participation with Defendant from continuing to operate Defendant's Non-Delivery Policy at Park Hill and Fox Hill;

c) Requiring Defendant to provide the same service to Park Hill and Fox Hill that it provides to other multi-family residential buildings on Staten Island;

d) Awarding such damages to Class members as will fully compensate them for their loss of rights, monetary damages, and dignitary harm suffered due to Defendant's unlawful conduct;

e) Awarding statutory damages to Class members in the amount of $500 per instance of discrimination, pursuant to N.Y. Civ. R. L. § 40-d;

f) Awarding punitive damages to the Plaintiff Class;

g) Awarding the Plaintiff Class reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

h) Granting the Plaintiff Class such other further relief as may be just and proper.

Dated: January 8, 2024
New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By:  _____/s/ O. Andrew F. Wilson_____
O. Andrew F. Wilson
Diane L. Houk
Laura S. Kokotailo
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

VLADECK RASKIN & CLARK, P.C.
Maia Goodell
111 Broadway, Suite 1505
New York, New York 10006
(212) 403-7300

*Attorneys for Plaintiffs*

**Figure A:**



**Figure B:**

