**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

GORDON FLOWERS, *et al*. on Behalf of
Himself and Others Similarly Situated,

    Plaintiffs,

   -against-

UNITED PARCEL SERVICE, INC.,

    Defendant.

No. 24-cv-07086 (ENV) (JAM)

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL**
**ARBITRATION AND TO DISMISS THE AMENDED COMPLAINT**

Dated: New York, New York
   June 26, 2025

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT................................................................................................................... 3

I.    THE ARBITRATING PLAINTIFFS CANNOT AVOID THEIR BINDING
      AGREEMENT TO ARBITRATE. ..................................................................... 3

      A.    Plaintiffs' Threadbare Allegations of Coercion Are Insufficient to Avoid
            the Arbitrating Plaintiffs' Agreement to Arbitrate. .................................. 3

      B.    The Scope of the Arbitration Provision Is Enforceable. ......................... 6

      C.    The Evidence Before the Court Is Sufficient to Resolve the Motion to
            Compel Arbitration. ................................................................................. 8

II.   PLAINTIFFS' CLAIMS ARE INDEPENDENTLY PREEMPTED BY TWO
      FEDERAL LAWS. ........................................................................................... 9

      A.    The FAAAA Provides No Carve Out for Plaintiffs' Claims. ............... 10

      B.    Plaintiffs Fail to Allege Any Conduct Unrelated to UPS Services. ...... 11

      C.    The Relief That Plaintiffs Seek Would Have a Significant Impact on
            UPS's Delivery Operations. ................................................................... 14

      D.    The Carmack Amendment Preempts Claims Like Plaintiffs' That Arise
            from Transportation and Delivery of Goods. ........................................ 15

CONCLUSION.............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abadi v. Am. Airlines, Inc.*,
No. 23-CV-4033, 2024 WL 1346437 (S.D.N.Y. Mar. 29, 2024) ...........................................13

*Adler v. Lehman Bros. Holdings Inc.* (*In re Lehman Bros. Holdings Inc.*),
855 F.3d 459 (2d Cir. 2017)...............................................................................................4

*Azzil Granite Materials, LLC v. Canadian Pac. Ry. Corp.*,
No. 20-CV-2381, 2023 WL 3346765 (E.D.N.Y. May 10, 2023), *aff'd sub
nom.*, *Azzil Granite Materials, LLC v. Canadian Pac. Ry. Co.*, No. 23-833,
2024 WL 1827289 (2d Cir. Apr. 26, 2024) ......................................................................15

*Borukh v. Experian Info. Sols., Inc.*,
No. 24-CV-6022-NRM-JRC, 2025 WL 1220042 (E.D.N.Y. Apr. 28, 2025) ........................9

*Brown v. Coca-Cola Enters., Inc.*,
No. 08-CV-3231 (JFB)(ETB), 2009 WL 1146441 (E.D.N.Y. Apr. 28, 2009)........................8

*Buck v. Am. Airlines, Inc.*,
476 F.3d 29 (1st Cir. 2007)................................................................................................14

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006)...........................................................................................................4

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995) ...................................................................................................6

*Desardouin v. United Parcel Serv., Inc.*,
285 F. Supp. 2d 153 (D. Conn. 2003)............................................................................10, 11

*Doricent v. Am. Airlines, Inc.*,
No. 91-12084Y, 1993 WL 437670 (D. Mass. Oct. 19, 1993) ...............................................11

*EagleMed LLC v. Cox*,
868 F.3d 893 (10th Cir. 2017) ...........................................................................................14

*Gilbert v. Indeed, Inc.*,
513 F. Supp. 3d 374 (S.D.N.Y. 2021)...................................................................................8

*Hart v. Canadian Imperial Bank of Com.*,
43 F. Supp. 2d 395 (S.D.N.Y. 1999).....................................................................................5

*Headstream Techs., LLC v. FedEx Corp.*,
No. 22-1410, 2023 WL 1434054 (6th Cir. Feb. 1, 2023) .....................................................13

*Holl v. United Parcel Serv., Inc.*,
No. 16-CV-05856-HSG, 2017 WL 11520143 (N.D. Cal. Sept. 18, 2017),
*aff'd*, 925 F.3d 1076 (9th Cir. 2019) ................................................................................9

*Mahant v. Lehman Bros.*,
No. 99 CIV. 4421 MBM, 2000 WL 1738399 (S.D.N.Y. Nov. 22, 2000) .............................4

*Mejia v. United Parcel Serv., Inc.*,
No. 2:24-cv-00246, 2024 WL 3510927 (D. Utah July 23, 2024) .......................................7

*Moise v. Fam. Dollar Stores of N.Y., Inc.*,
No. 16-CV-6314, 2017 WL 2378193 (S.D.N.Y. June 1, 2017) ..........................................5

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ........................................................................................................10

*Moton v. Maplebear Inc.*,
No. 15 CIV. 8879 (CM), 2016 WL 616343 (S.D.N.Y. Feb. 9, 2016) ................................9

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Las Vegas Pro. Football Ltd.
P'ship*,
No. 09 CIV. 7490 (PKC), 2010 WL 286634 (S.D.N.Y. Jan. 15, 2010), *aff'd
sub nom.*, 409 F. App'x 401 (2d Cir. 2010) ......................................................................4

*Pool Deals, LLC v. United Parcel Serv., Inc.*,
454 F. Supp. 3d 208 (W.D.N.Y. 2020) ..............................................................................7

*RDK NY Inc. v. City of New York*,
No. 21-CV-1529, 2023 WL 348467 (E.D.N.Y. Jan. 20, 2023) ........................................15

*Rockwell v. United Parcel Serv., Inc.*,
No. 2:99-cv-57, 1999 WL 33100089 (D. Vt. July 7, 1999) .........................................11, 15

*Rombom v. United Air Lines, Inc.*,
867 F. Supp. 214 (S.D.N.Y. 1994) ..................................................................................12

*Rowe v. N.H. Motor Transp. Ass'n*,
552 U.S. 364 (2008) ........................................................................................................10

*Smith v. Comair, Inc.*,
134 F.3d 254 (4th Cir. 1998) ...........................................................................................12

*Smith v. United Parcel Serv.*,
296 F.3d 1244 (11th Cir. 2002) .......................................................................................15

*Stadulis v. JetBlue Airways Corp.*,
No. CV-23-3695, 2023 WL 8437280 (D.N.J. Dec. 5, 2023) ...........................................13

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*,
  73 F.3d 1423 (7th Cir. 1996) ...................................................................................10, 12, 14

*Trinidad v. Am. Airlines, Inc.*,
  932 F. Supp. 521 (S.D.N.Y. 1996)....................................................................................12

*Vaughn v. J.P. Morgan Chase & Co.*,
  707 F. Supp. 3d 1042 (D. Colo. 2023)............................................................................7, 8

*VKK Corp. v. Nat'l Football League*,
  244 F.3d 114 (2d Cir. 2001).................................................................................................5

*Wexler v. AT & T Corp.*,
  211 F. Supp. 3d 500 (E.D.N.Y. 2016) ................................................................................6

**INTRODUCTION**

Plaintiffs cannot overcome the fact that their claims directly stem from and impact UPS's delivery services. Because of that, three Plaintiffs' claims are subject to arbitration given their agreements to arbitrate any disputes "arising out of or related to the provision of services by UPS," and all Plaintiffs' claims are barred under the FAAAA[1] and the Carmack Amendment preemption. Plaintiffs suggest their claims *must* proceed before this Court because they allege discrimination. Not so. Regardless of how Plaintiffs have styled their claims, this Court can and should (1) enforce valid agreements to arbitrate and (2) uphold the FAAAA and the Carmack Amendment's broad preemption provisions prohibiting claims, like here, that indisputably and directly relate to a carrier's core transportation services (delivery).

Plaintiffs never dispute that Gordon Flowers, Madeline Brown, and Aminat Fakunle (the "Arbitrating Plaintiffs") enrolled in UPS My Choice—an optional service that provides more flexibility and control over package deliveries. And Plaintiffs do not dispute the enrollment process or terms of the arbitration agreement described in UPS's Motion. In other words, there is no question that an arbitration agreement exists. Instead, Plaintiffs argue that the Arbitrating Plaintiffs enrolled in UPS My Choice under purportedly "coercive" conditions. But enrollment is free and completely optional, as demonstrated by the fact that most of the Plaintiffs in this case did not feel compelled to participate in this service despite receiving packages the same way as the Arbitrating Plaintiffs.

Plaintiffs also cannot evade arbitration obligations by arguing that the arbitration clause is overbroad. Courts routinely enforce similar arbitration provisions, including against claims for

---

[1] Defined terms have the same meaning as in UPS's Memorandum of Law in Support of Motion to Compel Arbitration and to Dismiss the Amended Complaint (the "Motion").

discrimination.  There is also no need for additional discovery to resolve the Motion.  UPS has already provided evidence of the Arbitrating Plaintiffs' enrollment in UPS My Choice—and thereby their agreement to the UPS My Choice Terms and UPS Tariff/Terms containing a binding arbitration provision—none of which the Arbitrating Plaintiffs dispute.  The Court can, and should, compel the Arbitrating Plaintiffs to arbitrate their claims.

Plaintiffs also cannot circumvent the preemption of their claims by two federal laws:  the FAAAA and the Carmack Amendment.  Despite Plaintiffs' position that discrimination claims fall outside the broad preemptive reach of the FAAAA, the FAAAA has no such carveout. Indeed, courts have granted motions to dismiss discrimination claims on FAAAA preemption grounds.  As for Plaintiffs' argument that their claims address "outrageous" and "unreasonable" conduct, Plaintiffs fail to allege any of the hallmarks that courts have found sufficient to fall outside the scope of a carrier's normal operations and avoid preemption.  Instead, Plaintiffs allege discrimination *in the provision of transportation services*, leaving no doubt that their claims are in fact "related to" UPS service.  Plaintiffs also cannot avoid FAAAA preemption by attempting to downplay the effects of the sweeping relief they seek.  Declaring the way in which UPS delivers to Park and Fox Hill Apartments unlawful, enjoining UPS from choosing how it delivers there, and ordering UPS to provide different delivery services at these locations would undoubtedly impact how UPS delivers packages.

Finally, Plaintiffs' narrow read of the Carmack Amendment runs counter to case law finding that the Carmack Amendment preempts claims arising from failures in connection with transportation or delivery of goods.  Because Plaintiffs' claims fall into that category, they are preempted by the Carmack Amendment.

For the reasons set forth below and in UPS's opening brief, the Arbitrating Plaintiffs'

claims should be compelled to arbitration, and the Amended Complaint should be dismissed in its entirety on preemption grounds.

## ARGUMENT

### I.    THE ARBITRATING PLAINTIFFS CANNOT AVOID THEIR BINDING AGREEMENT TO ARBITRATE.

Plaintiffs do not deny that the Arbitrating Plaintiffs enrolled in UPS My Choice, do not deny that the UPS My Choice Terms incorporate the UPS Tariff/Terms and its arbitration provision by reference, and do not deny that the arbitration provision explicitly states that "any controversy or claim . . . arising out of or related to the provision of services by UPS" is subject to arbitration.  (*See generally* Opp'n.)  In fact, they concede that "[b]y selecting to use the UPS My Choice service, participants must opt into a broad arbitration clause." (*Id.* at 6.)  This is more than enough for the Court to enforce the Arbitrating Plaintiffs' agreements to arbitrate their claims with UPS.  But in an attempt to avoid arbitration, Plaintiffs argue that:  (1) perhaps the Arbitrating Plaintiffs were "coerc[ed]" into using My Choice because UPS does not deliver directly to their apartments; (2) the arbitration provision is overbroad; and (3) additional discovery is needed.  (*Id.* at 16–21.)  Each of these arguments fails.

### A.    Plaintiffs' Threadbare Allegations of Coercion Are Insufficient to Avoid the Arbitrating Plaintiffs' Agreement to Arbitrate.

Plaintiffs make no effort to support their contention that the Arbitrating Plaintiffs chose to enroll in UPS My Choice under "coercive" conditions.  (*Id.* at 16–17.)  As detailed in the King Declaration, "[m]embership in UPS My Choice is optional and enrollment is free, unless the member elects to enroll in a premium membership." (*See* King Decl. ¶ 4.)  In other words, no one is obligated to enroll in the service.  Plaintiffs, however, insinuate coercion because allegedly "[f]or residents of Park Hill and Fox Hill, joining UPS My Choice is a means to remedy prejudice from a discriminatory delivery practice caused by UPS."  (Opp'n at 16.)

-3-

Tellingly, this argument is unsupported by any statements from Plaintiffs, let alone an Arbitrating Plaintiff.  (*See generally* Opp'n.)

Plaintiffs' challenge only supports why the Arbitrating Plaintiffs' dispute should be resolved in arbitration.  It is well-settled law that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006).  Unless one "specifically challenge[s] the validity of the arbitration provisions, or argue[s] that those provisions were the product of fraud, duress or some other impropriety . . . the issue of the contract's validity is an issue for the arbitrators to decide." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Las Vegas Pro. Football Ltd. P'ship*, No. 09 CIV. 7490 (PKC), 2010 WL 286634, at *3 (S.D.N.Y. Jan. 15, 2010), *aff'd sub nom.*, 409 F. App'x 401 (2d Cir. 2010).

Here, Plaintiffs never argue that the Arbitrating Plaintiffs entered into the arbitration provision itself through coercion or duress.  Rather, they speculate that the Arbitrating Plaintiffs may have been "coerced" into enrolling in UPS My Choice—and thereby entering the UPS My Choice Terms *as a whole*—because of the way they received packages.  (*See* Opp'n at 16–17.) Plaintiffs' enforceability argument is therefore for the arbitrator to decide.  *See Mahant v. Lehman Bros.*, No. 99 CIV. 4421 MBM, 2000 WL 1738399, at *2 (S.D.N.Y. Nov. 22, 2000) (duress claim must be resolved by arbitrator where "all of plaintiff's allegations supporting her duress claim relate to the enforcement of the employment application generally—not the enforcement of the arbitration provision alone").

Even if the Court were to address the merits of Plaintiffs' enforceability argument, there is no coercion.  The defense of coercion or economic duress is "reserved for extreme and extraordinary cases." *Adler v. Lehman Bros. Holdings Inc.* (*In re Lehman Bros. Holdings Inc.*),

855 F.3d 459, 477 (2d Cir. 2017) (citation omitted).  To establish coercion or duress, a plaintiff must show "(1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative."  *Hart v. Canadian Imperial Bank of Com.*, 43 F. Supp. 2d 395, 399 (S.D.N.Y. 1999) (citation omitted).  Further, "the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so."  *VKK Corp. v. Nat'l Football League,* 244 F.3d 114, 122 (2d Cir. 2001) (citation omitted).

None of those conditions exist here.  Plaintiffs fail to allege any unlawful threat that induced the Arbitrating Plaintiffs into registering for UPS My Choice.  *See Hart*, 43 F. Supp. 2d at 400 (no coercion or duress where plaintiff "has failed to allege any threat that induced him to sign").  Nor can it be said that the Arbitrating Plaintiffs had "no other alternative" but to enroll in UPS My Choice, which has a free membership and is completely optional.  (King Decl. ¶ 4; *see* Opp'n at 6, 16 (conceding that UPS My Choice is a "supplemental" service that "individuals can use").)  Indeed, five of the eight Plaintiffs did *not* enroll in UPS My Choice—despite receiving packages the same way as the Arbitrating Plaintiffs.  UPS My Choice is not required for a customer to receive packages.

Further, the Arbitrating Plaintiffs enrolled in UPS My Choice in November 2019, May 2020, and June 2020—more than four years before initiating this lawsuit in October 2024.  (King Decl. ¶¶ 12, 20–21.)  Plaintiffs do not claim that the Arbitrating Plaintiffs ever repudiated the UPS My Choice Terms during that period.  Instead, they have maintained their UPS My Choice memberships for several years, which undermines any argument that they enrolled in the service under coercion or duress.  *See Moise v. Fam. Dollar Stores of N.Y., Inc.*, No. 16-CV-6314, 2017 WL 2378193, at *4 (S.D.N.Y. June 1, 2017) (no coercion where plaintiff "signed the arbitration

agreement in September 2013, but continued working at Family Dollar until June 2016," "does not claim that he repudiated the Agreement at any point during this period," and "offered no explanation for remaining silent for nearly three years").

### B.    The Scope of the Arbitration Provision Is Enforceable.

The scope of the UPS arbitration provision is clear:  It applies to "any controversy or claim . . . arising out of or related to the provision of services by UPS."  (King Decl. ¶ 35.)  Such language is "the paradigm of a broad clause" and creates a "presumption of arbitrability." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20, 23 (2d Cir. 1995).  That presumption in favor of arbitration is further supported by how Plaintiffs describe their own claims.  According to Plaintiffs, their entire case is based on challenging the delivery "service" that UPS provides to them at Park and Fox Hill Apartments.  (Am. Compl. ¶ 1) (alleging that UPS "does not provide the same *service* to" Plaintiffs' apartment buildings) (emphasis added). That is, Plaintiffs' case is a "controversy or claim . . . arising out of or related to the provision of services by UPS" and subject to arbitration.  (King Decl. ¶ 35.)

Plaintiffs resist this conclusion by arguing that the arbitration provision is "overbroad." (Opp'n at 18–19.)  But Plaintiffs' cited cases are easily distinguished.  In *Wexler v. AT & T Corp.*, this District denied a motion to compel arbitration where the arbitration clause read: "AT & T and you agree to arbitrate all disputes and claims between us."  211 F. Supp. 3d 500, 501, 505 (E.D.N.Y. 2016).  The Court reasoned that the arbitration clause was "not limited to disputes concerning its service agreement," which could lead to "absurd results" if the clause was read to govern "literally every possible dispute." *Id.* at 502–04 (explaining that, under a literal reading of the overly broad clause, the plaintiff would be forced to arbitrate even if she was "hit by [defendant's] delivery van" or "tripped over a dangerous condition in [defendant's] store").

Here, by contrast, the arbitration provision in the UPS Tariff/Terms is limited to claims arising from or relating to UPS's services.  Rather than cover "literally every possible dispute" between UPS My Choice members and UPS, the arbitration clause applies to disputes "arising out of or related to the provision of *services* by UPS."  (King Decl. ¶ 35 (emphasis added).)  Courts do not hesitate in enforcing similar arbitration agreements arising from a company's services, including this exact UPS arbitration provision.  *See Mejia v. United Parcel Serv., Inc.*, No. 2:24-cv-00246, 2024 WL 3510927, at *2 (D. Utah July 23, 2024) (enforcing an arbitration provision with UPS for claim "arising out of or related to the provision of services by UPS"); *Pool Deals, LLC v. United Parcel Serv., Inc.,* 454 F. Supp. 3d 208, 215 (W.D.N.Y. 2020) (same).

Plaintiffs' citation to an inapposite case from outside this circuit fares no better.  (Opp'n at 19–20.)  In *Vaughn v. J.P. Morgan Chase & Co.*, a bank manager allegedly confronted a woman sitting in the bank lobby, told her "she was not welcome," called 911, and caused police officers to question the woman even though she was not arrested.  707 F. Supp. 3d 1042, 1045–46 (D. Colo. 2023).  After the woman sued for racial discrimination, the bank moved to compel arbitration based on the agreement the plaintiff signed when she opened her bank account, which required arbitration as to "any dispute relating in any way to your account or transactions."  *Id.* at 1046, 1048.  The District of Colorado denied the motion, finding that "Plaintiff's claims do not arise from, or relate to, the Deposit Account Agreement."  *Id.* at 1051.  The Court reasoned that "Plaintiff was not allowed to even attempt a bank transaction before she was approached and accused of nefarious conduct," when in fact "Defendants acted like Plaintiff was *not* a customer and had *no* relationship with Chase."  *Id.* at 1052.

But here Plaintiffs' claims directly "arise from" the "services" that UPS provides.  Despite Plaintiffs' efforts to separate their discrimination claims from UPS's package delivery,

the two are one and the same here.  Plaintiffs allege discrimination solely based on the delivery "service" that UPS provides to residents at Park and Fox Hill Apartments.  (*See* Am. Compl. ¶ 21 (stating "this case arises from" UPS's delivery policy at Park and Fox Hill Apartments).) That is, unlike the plaintiff in *Vaughn* who suffered discrimination "simply because she entered the branch and was sitting in the lobby," the conduct that Plaintiffs purport to challenge here stems from the delivery services that UPS provides.  707 F. Supp. 3d at 1054.

Accordingly, because Plaintiffs' claims arise from and are related to the services that UPS provides, the Arbitrating Plaintiffs cannot avoid their binding agreement to arbitrate.[2]

### C.      The Evidence Before the Court Is Sufficient to Resolve the Motion to Compel Arbitration.

In support of its request to compel arbitration, UPS submitted a sworn declaration from a UPS employee providing the usernames and addresses associated with the Arbitrating Plaintiffs' UPS My Choice memberships, along with details of their enrollment process and the agreement language.  (King Decl. ¶¶ 12, 20–21.)  Still, Plaintiffs argue that the Court should delay adjudication of the motion to compel arbitration "to allow discovery to proceed concerning contract formation of the three purported arbitration agreements."  (Opp'n at 20–21.)  Discovery is simply not required.[3]  "Courts have permitted limited discovery into the validity of the arbitration agreement only when the party opposing arbitration comes forth with reliable

---

[2] Further, contrary to Plaintiffs' suggestion that their claims are immune from arbitration simply because Plaintiffs allege discrimination,"[i]t is well settled that statutory discrimination claims can be the subject of an arbitration clause." *Brown v. Coca-Cola Enters., Inc.*, No. 08-CV-3231 (JFB)(ETB), 2009 WL 1146441, at *6 n.2 (E.D.N.Y. Apr. 28, 2009) (collecting cases); *see also Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 396 (S.D.N.Y. 2021) (observing that "Congress did not intend that discrimination claims be exempted from the FAA").

[3] Plaintiffs already argued for arbitration-related discovery, both in the February 10, 2025 Joint Status Letter (ECF No. 19) and at the Status Conference on March 24, 2025.  The Court rejected Plaintiffs' arguments, finding "there exists good cause for a stay of discovery," and ordered that "discovery is hereby stayed pending adjudication of Defendant's motion." (Minute Order, Mar. 24, 2025.)  Though Plaintiffs try to relitigate their failed arguments, they present no reason why the Court should revisit its ruling at this time.

evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Moton v. Maplebear Inc.*, No. 15 CIV. 8879 (CM), 2016 WL 616343, at *4 (S.D.N.Y. Feb. 9, 2016) (cleaned up). That is not the case here.

UPS has already provided a sworn declaration containing information regarding the Arbitrating Plaintiffs' enrollment in UPS My Choice (including the names, user IDs, and addresses associated with their accounts), the dates when the Arbitrating Plaintiffs enrolled, and the applicable user interfaces when the Arbitrating Plaintiffs enrolled.  (*See generally* King Decl.)  Nothing else is required.  *See Holl v. United Parcel Serv., Inc.*, No. 16-CV-05856-HSG, 2017 WL 11520143, at *1 (N.D. Cal. Sept. 18, 2017) (granting motion to compel arbitration with UPS My Choice user, without ordering additional discovery, based on screenshots in declarations), *aff'd*, 925 F.3d 1076 (9th Cir. 2019); *UPS World Wide Forwarding, Inc. v. Kenan*, No. 1:18-cv-06046-MKB-JO, Minute Order (E.D.N.Y. Nov. 14, 2018) (granting motion to compel arbitration based on a UPS declaration); *see also Borukh v. Experian Info. Sols., Inc.*, No. 24-CV-6022-NRM-JRC, 2025 WL 1220042, at *6 (E.D.N.Y. Apr. 28, 2025) (compelling arbitration where "the exhibits attached to Smith's declaration corroborate the statements contained in his declaration, including screenshots of the webpages that plaintiff would have encountered during the process of enrolling in CreditWorks and the Terms of Use"); *Moton*, 2016 WL 616343, at *5 (denying request for additional discovery where the plaintiff "has failed to offer any facts or evidence . . . that the agreement is invalid or that he did not intend to be bound by it").

## II.    PLAINTIFFS' CLAIMS ARE INDEPENDENTLY PREEMPTED BY TWO FEDERAL LAWS.

Regardless of whether the Court compels arbitration as to the Arbitrating Plaintiffs, the

FAAAA and the Carmack Amendment preempt all of the Plaintiffs' claims. (*See* Mot. at 18–26.) That Plaintiffs have styled their claims as ones for discrimination does not remove them from the broad preemptive scope of either federal law. (*Id.*)

## A.    The FAAAA Provides No Carve Out for Plaintiffs' Claims.

Plaintiffs do not dispute the clear authority holding that state-law claims "having a connection with or reference to [a carrier's] 'rates, routes, or services' are pre-empted." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992); *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370 (2008). Plaintiffs primarily argue that their claims cannot be preempted because they allege discrimination. (Opp'n at 8–12.) But the FAAAA does not carve out any category of claims from its preemptive scope. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996) ("*Morales* does not permit us to develop broad rules concerning whether certain types of common-law claims are preempted by the ADA.").

The primary case on which Plaintiffs rely, *Desardouin v. United Parcel Service, Inc.*, only reinforces that it is the **conduct** challenged—not the **claim** alleged—that determines whether preemption applies. (Opp'n at 10–11); 285 F. Supp. 2d 153, 155–57 (D. Conn. 2003). In *Desardouin*, a store owner sued UPS for racial discrimination and intentional infliction of emotional distress after a UPS driver allegedly accused the store owner—in front of his customers—of not having enough money to pay for merchandise and withheld deliveries. 285 F. Supp. 2d at 155–57. Allegedly, the driver further remarked to the owner in front of his customers: "UPS does not like you." *Id.* at 157. The District of Connecticut found that although the facts alleged "may relate tangentially" to UPS's services, "[t]o the extent Desardouin's claims for infliction of emotional distress do not 'relate' to [UPS]'s services and thus do not have a significant impact on these services, his state law claims are not preempted by the FAAAA." *Id.* at 164. But the Court did not completely close the door on finding the claims preempted,

-10-

ruling that "to the extent some of the factual allegations could be construed as relating to services provided by [t]he defendant, and discovery evidences that possibility, the court invites the parties to revisit the FAAAA preemption question at summary judgment." *Id.*

*Desardouin* is distinct for several reasons and even supports UPS's argument here. Plaintiff there challenged the conduct of a single UPS driver who allegedly humiliated the shop owner in front of his customers, which the Court found to be conduct only "tangentially" related to UPS's services. *Id.* at 155–57. By contrast, Plaintiffs here directly challenge the systematic delivery method to more than 1,400 apartments. (Am. Compl. ¶¶ 29–30.) Thus, while the conduct challenged in *Desardouin* "tangentially" related to UPS's services, the conduct that Plaintiffs challenge here directly relates to UPS's core service of package delivery. *See Rockwell v. United Parcel Serv., Inc.*, No. 2:99-cv-57, 1999 WL 33100089, at *2 (D. Vt. July 7, 1999) (finding the FAAAA preempted claims involving UPS delivery protocol because they "go to the heart of the services that UPS provides") (internal punctuation omitted). Accordingly, Plaintiffs' claims fall squarely within the broad preemptive reach of the FAAAA.[4]

## B.    Plaintiffs Fail to Allege Any Conduct Unrelated to UPS Services.

Plaintiffs next try to avoid FAAAA preemption by arguing that they challenge "outrageous" or "unreasonable" conduct totally unrelated to UPS's services. (Opp'n at 12–13.) According to Plaintiffs, the conduct at issue is "outrageous" and "unreasonable" because for three decades UPS has "required residents of Park Hill and Fox Hill . . . to wait outside to pick up their shipments from a UPS truck rather than having the full benefit of the at-home delivery

---

[4] Plaintiffs' reliance on *Doricent v. Am. Airlines, Inc.* is likewise misplaced, as the claims there involved a flight crew yelling racial epithets at a passenger, which had nothing to do with the services that airlines provide—contrast to the alleged "discrimination" here that focuses on how UPS delivers packages. No. CIV. A. 91-12084Y, 1993 WL 437670, at *1–2 (D. Mass. Oct. 19, 1993). UPS also denies that it provides "inferior" or "discriminatory" service to any of its customers, as Plaintiffs wrongly allege that UPS suggested. (Opp'n at 11 n.3.)

service residents have paid for." (Opp'n at 12.) But these allegations fall far short of the "outrageous" or "unreasonable" conduct that courts have found sufficiently unrelated to service to avoid preemption.

Courts have acknowledged limited circumstances where actions "stemming from outrageous conduct" may avoid preemption under the ADA, and by analogy the FAAAA, "if the conduct too tenuously relates or is unnecessary to" a carrier or airline's services. *See Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998); *see also Rombom v. United Air Lines, Inc.*, 867 F. Supp. 214, 222 (S.D.N.Y. 1994) (acknowledging that ADA preemption does not apply to "outrageous conduct that goes beyond the scope of normal aircraft operations," but service "provided in a manner that falls within a spectrum of reasonable conduct" weighs "in favor of preemption"). Examples of the extreme conduct that courts have found to avoid preemption include where an airline had a passenger arrested out of spite, *Rombom*, 867 F. Supp. at 224, where plaintiff suffered severe hearing loss during a flight, *Trinidad v. Am. Airlines, Inc.*, 932 F. Supp. 521, 526 (S.D.N.Y. 1996), and where an airline defamed a travel agency to its own clients, *Travel All Over the World*, 73 F.3d at 1433. Plaintiffs fail to allege any similar conduct here and rely only on UPS's alleged delivery practices to try to establish their claims.

As an initial matter, it can hardly be said that UPS's delivery method is "outrageous" or "unreasonable" when deliveries are within the scope of UPS's normal operations and nothing in the UPS Tariff/Terms guarantees *home* delivery services. (*See* King Decl. Exs. B–C.) The UPS Tariff/Terms broadly defines "Delivery" to include various methods of delivery including, "to an alternate address or location" and to UPS Access Points—third-party owned businesses or locations where recipients can pick up packages during set hours. (*See* King Decl. Ex. B. § 2; Ex. C § 2.) In other words, UPS expressly advises consumers that it might deliver packages to a

location other than directly to individuals' residences, or for pickup during limited hours, as it does at Park and Fox Hill Apartments. (*See id.*)

Further, contrary to Plaintiffs' suggestion, framing their claims as discrimination does not make the challenged conduct unrelated to UPS's services. In *Abadi v. American Airlines, Inc.*, the Southern District of New York found that discrimination claims against airline mask requirements were not preempted because the allegations "in no way rise to the level of 'outrageous conduct' that would allow [Plaintiff] to escape preemption." No. 23-CV-4033, 2024 WL 1346437, at *38 (S.D.N.Y. Mar. 29, 2024). The Court emphasized that the plaintiff there never alleged "invidious discrimination"—that is, that the airlines applied their mask mandate to the plaintiff "because of, not merely in spite of, its adverse effects upon him as a person with a disability." *Id.* (internal quotation marks omitted). So too here, Plaintiffs do not allege that UPS singled them out or intentionally discriminated against them, including in the method of delivery UPS used. Plaintiffs allege "disparate impact" based on the way UPS delivers packages to them compared to other sites, despite UPS applying the same operational factors to determine delivery service at Park and Fox Hill Apartments as it does everywhere else it delivers. (Am. Compl. ¶ 93.)

In sum, Plaintiffs cannot avoid preemption simply by labelling UPS's conduct as discriminatory; only conduct that is sufficiently distinct from the provision of carrier services such that it is only "tangentially" related to service escapes preemption.[5] Plaintiffs can make no such allegation here, where their entire case is based on the manner in which UPS accomplishes

---

[5] *See also Headstream Techs., LLC v. FedEx Corp.*, No. 22-1410, 2023 WL 1434054, at *3 (6th Cir. Feb. 1, 2023) (finding claim for misrepresentation about misdelivered package was not "so intentionally malicious as to be outrageous or outside the scope of FedEx's operations" to avoid ADA preemption); *Stadulis v. JetBlue Airways Corp.*, No. CV-23-3695, 2023 WL 8437280, at *5 (D.N.J. Dec. 5, 2023) (finding discrimination claim against airline mask mandates preempted because they "pertain to JetBlue's policies that implicate" boarding procedures and transportation of passengers, which "relate directly to the airline's services").

delivery.

### C.    The Relief That Plaintiffs Seek Would Have a Significant Impact on UPS's Delivery Operations.

Plaintiffs' claims are also independently preempted because granting the relief they seek would have a significant effect on UPS.  According to Plaintiffs, dictating UPS's delivery policy "would have no significant impact on UPS's functioning" because "Park Hill and Fox Hill represent an infinitesimally small percentage of its economic reality."  (Opp'n at 13–14.)  Not so. In determining whether FAAAA preemption applies, courts weigh two considerations:  whether the claim "relates to [ ] rates, routes, or services, either by expressly referring to them **_or_** by having a significant economic effect upon them."  *Travel All Over the World*, 73 F.3d at 1432 (internal quotation marks omitted) (emphasis added); *see also Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 34–35 (1st Cir. 2007) ("[T]he ADA preempts both laws that explicitly refer to an airline's prices **_and_** those that have a significant effect upon prices.") (emphasis added).  In other words, "the court only needs to decide whether a particular state law or claim has a 'forbidden significant economic effect on [ ] rates, routes, or services' when the state law at issue does not 'expressly refer to [ ] rates, routes or services' itself."  *EagleMed LLC v. Cox*, 868 F.3d 893, 902 (10th Cir. 2017) (citing *Travel All Over the World*, 73 F.3d at 1433).

As set forth above and more fully in the Motion, Plaintiffs' claims expressly "relate to" UPS's services by challenging the way UPS delivers packages.  (Mot. at 19–24.)  That alone requires preemption without further inquiry.  *Travel All Over the World*, 73 F.3d at 1432.

Plaintiffs' claims are also preempted, however, under the alternative measure of whether they would have a "significant economic effect" on UPS's services.  Through this lawsuit, Plaintiffs seek to override UPS's operational decisions and alter the way UPS delivers packages to more than 1,400 units across 11 buildings at Park and Fox Hill Apartments.  (Am. Compl. at

19.)  Granting this relief "would necessarily impact directly upon UPS's services," as well as the delivery routes for Park and Fox Hill Apartments.  *Rockwell*, 1999 WL 33100089, at *3.  While Plaintiffs speculate that granting their relief would be limited to their buildings, the operational reality is that the impact would be far greater—potentially requiring adjustments to this and other delivery routes, personnel requirements, and delivery hours—to account for the time and resources required to accommodate the operational change.  Because ordering UPS to deliver the way Plaintiffs prefer "would fundamentally affect how UPS provides its service," the FAAAA independently preempts Plaintiffs' claims.  *Id*.

> **D.** **The Carmack Amendment Preempts Claims Like Plaintiffs' That Arise from Transportation and Delivery of Goods.**

Plaintiffs likewise fail to escape preemption under the Carmack Amendment.  According to Plaintiffs, the Carmack Amendment "has no application here" because its preemptive effect is limited to claims for lost or damaged goods.  (Opp'n at 14–16.)  Contrary to this assertion, preemption under the Carmack Amendment broadly embraces "a range of delivery issues," including delay or refusal to deliver.  *RDK NY Inc. v. City of New York*, No. 21-CV-1529, 2023 WL 348467, at *3 (E.D.N.Y. Jan. 20, 2023); *see also Smith v. United Parcel Serv.*, 296 F.3d 1244, 1246 (11th Cir. 2002) ("the Carmack Amendment preempts state law claims arising from failures in the transportation and delivery of goods"); *Azzil Granite Materials, LLC v. Canadian Pac. Ry. Corp.*, No. 20-CV-2381, 2023 WL 3346765, at *8 (E.D.N.Y. May 10, 2023), *aff'd sub nom.*, *Azzil Granite Materials, LLC v. Canadian Pac. Ry. Co.*, No. 23-833, 2024 WL 1827289 (2d Cir. Apr. 26, 2024) ("Courts have found both delay in delivery even without property loss or damage and the refusal to deliver to be the types of claims preempted by the Carmack Amendment.").  Thus, the Carmack Amendment independently preempts Plaintiffs' claims.

## **CONCLUSION**

For the foregoing reasons, the Court should stay claims from the Arbitrating Plaintiffs

pending arbitration and dismiss all claims from the remaining Plaintiffs as preempted.


Dated: New York, New York                          MORRISON & FOERSTER LLP
       June 26, 2025


                              By: /s/ *Jessica Kaufman*
                                  Jessica Kaufman (Bar No. 4501847)
                                  Tiffani B. Figueroa (Bar No. 5220744)
                                  jkaufman@mofo.com
                                  tfigueroa@mofo.com
                                  250 West 55th Street
                                  New York, NY  10019-9601
                                  Telephone:  212.468.8000
                                  Facsimile:  212.468.7900

                                *Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

Pursuant to Rule III.D of Judge Vitaliano's Individual Motion Practice and Rules, and pursuant to the Minute Order of the Court dated March 24, 2025, I hereby certify that on this 26th day of June, 2025, I caused to be served a true and correct copy of the foregoing document to Plaintiffs' counsel of record via electronic mail, and filed the fully briefed motion via ECF.

*/s/ Jessica Kaufman*
Jessica Kaufman